**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

KARIM HOLLOWAY,                          :
                                         :
                    *Plaintiff,*         :
                                         :
          v.                             :       2:24-cv-05361
                                         :
CLEMENS FOOD GROUP, LLC,                 :
                                         :
                    *Defendant.*         :

**MEMORANDUM**

## I.   INTRODUCTION

On October 4, 2024, Plaintiff Karim Holloway (Holloway) filed this action with

the Court alleging discrimination and retaliation under Title VII of the Civil Rights

Act of 1964, 42 U.S.C. § 2000(e) *et seq.* (Count I) and discrimination and retaliation

of the Civil Rights Act of 1866, 42 U.S.C. § 1981 (Count II).  On January 9, 2025,

Plaintiff filed an Amended Complaint alleging discrimination and retaliation under

the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.* (PHRA).  Defendant

Clemens Food Group, LLC, (CFG) answered the Amended Complaint and Plaintiff's

claims have advanced through discovery.  Currently before this Court are CFG's

Motion for Summary Judgment, Plaintiff's Response in Opposition, and CFG's Reply

in Support of its Motion.  For the following reasons CFG's Motion is granted.

In July of 2017, CFG hired Holloway, an African American man, as a

Smokehouse Operator on first shift at Defendant's Hatfield, Pennsylvania location.

Joint Statement of Undisputed Facts at ¶¶ 4, 6 (J.S.).  In January of 2019, Plaintiff

was promoted to Line Lead. J.S. at ¶ 5.  As a Line Lead, Plaintiff was responsible for

ensuring that his team followed certain Good Manufacturing Procedures (GMPs)

1

such as checking the food-processing area for cleanliness before starting operations and placing food products in vats designated for edible and inedible material.  *Id.* at ¶¶ 21-29.  Like Defendant's other employees, Plaintiff was subject to the rules in the Employee Handbook (Handbook), including the requirement to wear protective garments in active production areas and the prohibition on personal food in certain areas of Defendant's facilities.  *Id.*  Further, the Handbook sets forth policies relating to non-discrimination, retaliation, and professional conduct.  *Id.* at ¶¶ 10-12.

Between 2020 and 2021 Plaintiff accrued three disciplinary warnings.  *Id.* ¶¶ 34-36.  Two of the warnings dealt with food-safety concerns, and the third arose from a verbal altercation with a co-worker.  *Id.*  On the written warning related to this verbal altercation, Plaintiff included his own remarks apologizing for his role in the matter and taking full responsibility.  *Id.* at ¶ 37.  Otherwise, Plaintiff maintains his employment reviews were positive.  Pl.'s Resp. Opp'n at 1.

In August of 2022, an African American team member, Kevin Brown (Brown), reported to CFG's Human Resources Business Partner Sandra Robinson that Holloway possibly stole company time.  Pl.'s Dep. at 140:9-14, 146:23-147:3. Specifically, Mr. Brown reported that Holloway was in the gym from 4:00 a.m. to 5:00 a.m. when he should have been on the production floor.  Robinson Dep. at 24:13-18. To follow up on this accusation, Robinson engaged a security officer who reviewed the security footage and badge swipes.  This security officer confirmed Holloway to be in the gym at the times mentioned above.  *Id.* at 24:18-23.

After reviewing the security footage Robinson conferred with Holloway's supervisory chain of command, including superintendent Marvin Gonzalez (Gonzalez) to confirm that Holloway did in fact steal company time.  *Id.* at 24:23-25:9. Ultimately, Robinson called Holloway down to the human resources (HR) office to

confront him about this infraction. Pl.'s Dep. at 138:9-14. During this meeting, Holloway denied being in the gym and encouraged Robinson to re-review the video. Robinson Dep. at 25:10-13. Robinson had additional security personnel review the video and eventually confirmed that Holloway **was not** the person depicted in the security footage. *Id.* at 25:13-17. Holloway was never disciplined with respect to this incident and returned to work after his meeting with HR. Pl.'s Dep. at 307:24-308:15.

There were several additional disciplinary-related actions against Plaintiff in 2023. In February, the Plaintiff was given a "final warning" by Gonzalez when Plaintiff moved product intended for an "inedible vat" to an "edible vat", thereby contaminating the product. J.S. at ¶¶ 38-41. On two separate dates during May of 2023, security footage showed Plaintiff walking toward the food processing floor with personal food and without proper gear. Defendant did not take any disciplinary action against Plaintiff at the time. J.S. at ¶¶ 42-45. On May 9, supervisor Adela Monzon (Monzon) gave Plaintiff a verbal warning for beginning food processing in a room with trash, which is a food safety violation according to CFG's GMPs. J.S. at ¶ 46.

A little over two weeks later, one of Holloway's team members, Ramon Torres (Torres), submitted a written complaint about Plaintiff's supervision. *Id* at ¶ 48. The complaint recounted an incident in which a meat rack fell on Torres. Ex. BB. Holloway prevented additional employees from helping Torres after this incident. Pl.'s Dep. at 212:22-213:6. After this incident, Gonzalez and Robinson informed Plaintiff he would be demoted from Line Lead. J.S. at ¶ 49.

In early June, Plaintiff and Robinson discussed the possibility of Plaintiff transitioning to a maintenance technician position. *Id.* at ¶ 50. First, Robinson and Plaintiff discussed a first shift maintenance technician position. *Id.* Plaintiff

3

confirmed he would be interested in accepting the position. *Id.* at ¶ 51. Later, Robinson told Plaintiff that only a third shift position was available. *Id.* at ¶ 52. Plaintiff declined the third shift offering. *Id.* at ¶ 53.

On June 5, 2023, Plaintiff and Robinson met in person to discuss other positions open at Clemens. *Id.* at ¶¶ 54-55. As Robinson was reviewing potential openings and their suitability, Plaintiff tendered a prepared resignation letter. *Id.* at ¶¶ 56, 59. In fact, Plaintiff had received an offer of employment from a nearby company before his June 5 meeting with Robinson. *Id.* at ¶ 60. All this before Plaintiff's actual demotion from Line Lead. *Id.* at ¶¶ 49-58.

Shortly after Plaintiff's June 5 resignation, he emailed Robinson and stated that Gonzalez had given him a final warning for a "mistake." *Id.* at ¶ 63. On July 12, 2023, Plaintiff had a telephone call with CFG Operations Superintendent and Plant Manager Greg Hallman (Hallman) and vented to Hallman about various aspects of his time and separation with CFG. *Id.* at ¶ 65. On July 13 Clemens' HR Director Steve Hunsicker (Hunsicker) and Senior HR Manager Josh Cassel (Cassel) conducted a telephone exit interview with Plaintiff to discuss his experience with CFG. *Id.* at ¶ 66. Around this time, Plaintiff communicated to CFG representatives that he may pursue legal action against CFG for his perceived mistreatment. Pl.'s Dep. at 264:20-265:11. This suit followed.

## II.    <u>ARGUMENTS OF THE PARTIES</u>

According to Plaintiff, because of Defendant's failure to address the ongoing discrimination and retaliation against him, "he had no other choice than to resign and was constructively discharged." Am. Compl. at 10. Plaintiff asserts that he "was treated differently and unjustly disciplined and demoted[.]" Pl.'s Resp. Opp'n at 9. Plaintiff also asserts that he was retaliated against for repeatedly addressing HR

about what he perceived was a racist accusation and misidentification of him stealing company time. *Id.* at 18.

In its motion for summary judgment, CFG asserts that that final and verbal warnings issued to Plaintiff prior to his resignation for workplace infractions did not constitute adverse employment actions. CFG's argument follows that, absent a showing of an adverse employment action, Plaintiff is unable to establish a *prima facie* case of discrimination. CFG further argues that Plaintiff's resignation did not amount to a constructive discharge. CFG asserts that there is no evidence of retaliation in the record. Finally, CFG argues that even if Plaintiff could establish a *prima facie* case of discrimination, there is no indication that its several legitimate non-discriminatory reasons for demoting Plaintiff prior to his resignation were in any way pretextual.

## III.  LEGAL STANDARD

Summary judgment is appropriate "when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Mann v. Palmerton Area School District*, 872 F.3d 165, 170 (3d Cir. 2017) (citation and internal quotation omitted). A fact is "material" if, under the applicable substantive law, it is essential to the proper disposition of the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*

The party moving under Rule 56 "bears the burden of demonstrating the absence of any genuine issues of material fact. When determining whether there is a triable dispute of material fact, the court draws all inferences in favor of the non-

5

moving party." *Doeblers' Pennsylvania Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820-821 (3d Cir. 2006) (citations and internal quotation omitted).

The movant's initial burden does not relieve the complainant's obligation to produce evidence that would support a jury verdict. *Anderson,* 477 U.S. at 256. Because a motion for summary judgment looks beyond the pleadings, the opposing party must advance specific facts showing that there is a genuine factual dispute. *See Marshall v. Sisters of Holy Family of Nazareth*, 399 F.Supp.2d 597, 598 (E.D. Pa. 2005). The non-movant may not rest on their pleadings but must point to probative evidence tending to support the complaint. *Anderson*, 477 U.S. at 256. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

If the "evidence presented by the non-movant is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-250. "Where the movant is the defendant, or the party without the burden on the underlying claim, the movant has no obligation to produce evidence negating its opponent's case. The moving party merely has to point to the lack of any evidence supporting the non-movant's claim." *Brown v. LVNV Funding*, LLC, No. CV 24-6412, 2025 WL 2044174, at *1 (E.D. Pa. July 18, 2025) (Weilheimer, J.) (citing *National State Bank v. Federal Reserve Bank of New York*, 979 F.2d 1579, 1582 (3d Cir. 1992)).

Claims based upon discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) *et seq.*, Section 1981, and the Pennsylvania Human Relations Act, 43 P.S. §§ 951 *et seq.*, are evaluated using the same core analytic framework. *Williams v. Tech Mahindra (Americas) Inc.*, 70 F.4th 646, 651-652 (3d Cir. 2023); *Cf. Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996). To make a *prima*

*facie* case for disparate treatment under those statutes, a plaintiff must at least be able to prove: "(1) the plaintiff belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action despite being qualified; and (4) the action occurred under circumstances that raise an inference of unlawful discrimination." *Anderson v. Mercer Cty. Sheriff Dep't*, 815 F. App'x 664, 666 (3d Cir. 2020).

To prevail on a claim for unlawful retaliation under those statutes, a plaintiff must prove: (1) they engaged in conduct that was protected under the relevant statutory provision; (2) the employer took a materially adverse action or a series of materially adverse actions against them; and (3) there was a causal relationship between the protected conduct and the employer's materially adverse response or responses to that conduct. *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997).

## IV.    DISCUSSION

Plaintiff's arguments regarding constructive discharge are meritless. "To prevail on a claim of constructive discharge, a plaintiff must show that [his] employer knowingly permitted discriminatory employment conditions so intolerable that a reasonable person subject to them would have to resign." *Heredia-Caines v. Lehigh Valley Hosp., Inc.*, 580 F. Supp. 3d 114, 128 (E.D. Pa. 2022) (Gallagher, J.) (cleaned up). While this standard appears to mimic that of a typical hostile work environment claim, constructive discharge claims constitute a higher hurdle for plaintiff's. *Id.* (citing *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d. 311, 317 n.4 (3d Cir. 2006).

As an initial matter, Plaintiff's own deposition testimony fails to identify any pervasive discrimination or any racial animus at all. Pl.'s Dep. at 282:1–290:1-4. Plaintiff's claims of racism are generally born out of his disagreement with CFG that

his treatment was a result of racism in the first instance.[1]  The following exchange from Plaintiff's deposition is instructive.

> **Q**: Did Mr. Gonzalez ever make a negative comment to you about having complained about the gym incident?
> **A**: Yes.
> **Q**: When?
> **A**: I told you.  He Said, "The Gym incident can't be racism – can't be discriminatory because Sandy Robinson is black." Didn't say African American, he used the word "black."
> **Q**: Okay.  And that's the comment you're relying on?
> **A**: And I—and I felt that was inappropriate to make.

Pl.'s Dep. at 311:4-16.  This is not enough.  To be sure, Plaintiff was concededly misidentified as someone stealing company time.  This misidentification appears to be the result of viewers confusion with Plaintiff and another African-American employee at CFG.  That was likely uncomfortable and hurtful.  However, Plaintiff was never disciplined for this infraction and was paid for the entire day.

Plaintiff claims that he engaged in protected activity by repeatedly visiting HR to complain about his misidentification in the gym.  But again, he was not disciplined for that matter and was paid for the entire day once the misidentification was clarified.  CFG's failure to comply with Plaintiff's opinion that something additional be done about this isolated incident does not create intolerable discriminatory employment conditions.  Further, CFG's misidentification cannot overcome Plaintiff's conceded disciplinary infractions during his time with CFG.  Pl.'s Dep. 153:19-154:12.

---

[1]    Plaintiff also argues that he would not have been able to perform the maintenance tech position CFG offered him in expectation of his demotion because it would have required testing/qualifying for the position.  Pl.'s Resp. at 11-13.  The Court does not engage the law on this argument because it is exceptionally weak for two primary reasons.  First, Plaintiff did not demonstrate CFG's lack of willingness to retest him or make an accommodation for this position.  Second, Plaintiff seemed ready and willing to engage whatever testing he might have to undergo when he believed the position was a first shift position.  Pl.'s Dep. at 223:7-224:16.  The testing became an obstacle once he was told it would be a third shift position, at which point he submitted his resignation.

The record is replete with examples of Plaintiff's infractions. This culminated in team member Torres submitting a written complaint regarding an incident where equipment fell on top of him and Plaintiff laughed at Torres and prevented other team members from assisting him. Other team members besides Torres described the incident in the same way.[2] Dkt. 41-4,5. Throughout the deposition testimony Plaintiff repeatedly failed to identify any instance that he was aware of where employees were issued warnings for similar conduct and not disciplined. Pl.'s Dep. at 309:2-12; 311:17-313:10. This Court is certain that Plaintiff was likely disappointed with the prospect of his future demotion. But what is left is a record devoid of any inference of pervasive racial discrimination and a voluntary resignation where Plaintiff apparently had already secured a job with a different organization. Stated differently, Plaintiff has failed to establish any causal nexus between his race and his anticipated demotion.

Plaintiff's resignation and departure prior to his demotion – particularly where CFG was actively working to place Plaintiff in another position – is likely fatal to his establishment of a *prima facie* case if discrimination. Plaintiff cites *Eubanks v. Sunoco Logistics Partners, LP*, for the proposition that the reprimands and warnings constituted adverse employment actions sufficient to establish his *prima facie* case. No. CIV.A. 12-1741, 2012 WL 3866961, at *3 (E.D. Pa. Sept. 6, 2012) (Yohn, J.).

---

[2] The Court will not engage in successive reflection of Plaintiff's counsel failing to cite the record, apprehend the record, or misrepresent the record in its Response in Opposition. However, one example is instructive. Counsel's recounting of the Torres incident (the one Plaintiff was demoted for) suggests that CFG has produced no evidence that Plaintiff laughed at Torress during the incident. Pl.'s Resp Opp'n at 23. In fact, Plaintiff affirmatively asserts that "not one statement indicates that Holloway laughed at Torress." *Id.* This is not true. Even if it were, counsel fails to cite to those statements – leaving the court to do exactly what it should not have to; search the record for facts and evidence regarding a material dispute. Uncovered in the Court's search of the docket are multiple witness statements indicating that Plaintiff laughed/mocked/humiliated Torress. *See* Dkt. 41-5 (Fiueroa Statement May 25, 2023); Dkt. 41-4 (Lopez Statement, May 25, 2023); Dkt. 41-3 (Torres Statement May 25, 2023). What is left is Plaintiff's own disagreement with the actual record evidence.

*Eubanks* was evaluating whether the plaintiff there had stated a cause of action under 12(b)(6). *Id.* at *3 ("I conclude that the allegation that [plaintiff's] received a reprimand letter in his personnel file is sufficient support for his claim such that his complaint survives the instant Rule 12(b)(6) motion."). Here, the Court is evaluating Plaintiff's cause after discovery. The Rule 56 hurdle is higher. Ironically, *Eubanks* also explains that "an adverse employment action must be more disruptive than a mere inconvenience **or an alteration of job responsibilities**." *Id.* at *2 (cleaned up) (emphasis added). This Court concludes that the warnings and reprimands did not materialize into the level of disruption required to constitute an adverse employment action.

Plaintiff's claims with respect to his anticipated demotion are also weak. The record indicates that no one knew what the change in Plaintiff's responsibilities would be because he resigned in the middle of the discussion regarding his reassignment. J.S. at ¶¶ 49-59. Finally, and most persuasively, even assuming Plaintiff had established a *prima facie* case of discrimination, CFG has cited several legitimate non-discriminatory reasons for Plaintiff's anticipated demotion. These reasons include the disputes with co-workers, subordinates, and food contamination violations cited above. Tellingly, the argument section of Plaintiff's Response in Opposition, asserting that he was treated differently because of his race, barely cites to the record at all. What the record does reveal are several legitimate reasons for Plaintiff's anticipated demotion or reassignment. Absent from the record is any plausible examples of pretext on the part of CFG. *See Meis v. Aria Health Physician Servs.*, 788 F. Supp. 3d 661, 670-671 (E.D. Pa. 2025) (Weilheimer, J.) (holding that when proffered LNDRs are strong and the record is replete with contemporaneous factual support, plaintiff's must advance correspondingly strong evidence of pretext).

## V.      CONCLUSION

In conclusion, Plaintiff has simply failed to point to any record evidence upon which a reasonable jury could find that his anticipated demotion, or the verbal and written warnings, were the result of his race or any retaliation for complaining to HR. There is no *genuine* dispute of material fact. Accordingly, CFG's motion to dismiss is granted. An appropriate order will follow.

BY THE COURT:

_____
GAIL WEILHEIMER            J.

11